UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE VIETS, | : | |
| | : | |
| Plaintiff, | : | No. 3:21-CV-01241 (VLB) |
| | : | |
| v. | : | |
| | : | March 30, 2023 |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
| Defendant. | : | |
| | : | |

**MEMORANDUM OF DECISION GRANTING CLAIMANT'S MOTION TO REVERSE DECISION OF THE COMMISSIONER, [DKT. 21], AND DENYING RESPONDENT'S CROSS-MOTION FOR JUDGMENT ON THE PLEADINGS, [DKT. 23]**

Claimant Nicole Viets bring this action under § 405(g) of Title 42 of the United States Code, appealing the Commissioner of the Social Security Administration's ("SSA") final decision denying her disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. Viets requests the Court reverse the decision, arguing the Administrative Law Judge ("ALJ") erred at Steps Three, Four and Five of the five-step disability inquiry. The Commissioner moves to affirm the judgment, opposing each of Viets' arguments. For the following reasons, the Court finds the ALJ erred at Step Three, reverses the decision, and remands the case for additional proceedings.

I. BACKGROUND

Claimant submitted a Statement of Facts, which the Commissioner adopts and provides additional statements. (*See* Dkts. 21-2 (Cl.'s SOF), 23-2 (Resp.'s

SOF).) The Court incorporates both Statements of Fact and additional corroborated evidence into this opinion.

## A. Relevant Medical History

Nicole Viets has a long history of medical conditions that impact multiple body systems. Relevant to this case are the following. First, she was diagnosed with multiple sclerosis in September 2019. Second, she has a history of bipolar type 1 disorder, major depression with psychotic symptoms, anxiety disorder, post-traumatic stress disorder ("PTSD"), and obsessive compulsive disorder ("OCD"). (R. 16−31, 896, 2438.) Third, Viets has various visual impairments, including glaucoma, cataracts, chronic iridocyclitis, and uveitis. (R. 16−31, 1136, 1149, 1995, 1997.) Fourth, she has a history of chronic ankle and knee pain, including right ankle reconstruction surgery in 2018. (R. 16−31, 1136.) Finally, Viets also has a history of hypertension, hyperlipidemia, asthma, endocrine disorder, obesity, gastroesophageal reflux disease ("GERD"), latent tuberculosis, arthralgia, and a pineal cyst. (R. 16−31, 1136, 2413.)

## B. Procedural History

Only July 26, 2019, Viets filed her DIB and SSI applications, alleging a disability onset date of June 18, 2019. (R. 16.)

The Commissioner denied her application on October 10, 2019, and on reconsideration on December 19, 2019. (*Id.*) Viets thereafter requested a hearing, which the ALJ held telephonically (due to the COVID-19 pandemic) on April 6, 2021. (R. 41.) The ALJ issued his denial on April 27, 2021. (R. 31.) Viets requested review

from the SSA Appeals Council, which denied her request on August 20, 2021. (R. 1.) This appeal followed.

      C.      The ALJ's Decision

On April 27, 2021, the ALJ made several findings of fact in his decision denying Viets' application, which are subject to review by this Court. First, the ALJ found Viets has not engaged in substantial gainful activity since the alleged onset date of June 18, 2019. (R. 19.) Second, the ALJ found Viets has nine severe impairments: (1) multiple sclerosis, (2) degenerative changes in the knees, (3) obesity, (4) depressive disorder, (5) generalized anxiety disorder, (6) PTSD, (7) OCD, (8) bipolar disorder, and (9) osteochondral lesion of the right talar dome. (*Id.*) The ALJ found Viets has the following non-severe impairments: glaucoma, cataracts, chronic iridocyclitis, uveitis, hypertension, asthma, latent tuberculosis, pineal cyst, right heel cyst, and GERD. (*Id.*) Third, the ALJ found Viets did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 20.) The ALJ discussed Listings 1.18 (Abnormality of a major joint(s) in any extremity), 11.09 (Multiple Sclerosis), 12.04 (Depressive, Bipolar and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), and 12.15 (Trauma- and Stressor-related Disorders). (*See* R. 20−22.) Fourth, the ALJ found Viets had the residual functional capacity to perform light work with the following restrictions: occasionally climb ramps and stairs; cannot climb ladders, ropes or scaffolds; frequently balance, stoop, and kneel; occasionally crawl and crouch; avoid concentrated exposure to extreme heat and vibration; and cannot work at

unprotected heights or operate a motor vehicle or machinery with moving parts. (R. 22.)  The ALJ determined Viets could perform simple, routine tasks and execute simple, routine instructions.  (R. 23.)  He noted she must use a cane for walking.  (*Id*.)  Fifth, the ALJ determined Viets cannot perform past relevant work but there are jobs in the national economy she could perform, adopting the vocational expert's testimony that a person with Viets' conditions could perform the jobs of tube operator, addresser, and table worker.  (R. 30.)

## II.     LEGAL STANDARD

The Social Security Act establishes that benefits are payable to individuals who have a disability.  42 U.S.C. § 423(a)(1).  "Disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ."  42 U.S.C. § 423(d)(1).  An "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment must be one which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

In order to determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner:

1. First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity ("Step One").

2. If he is not, the Commissioner next considers whether the claimant has a "severe impairment," or "combination of impairments that is severe and meets the duration requirement," which significantly limits his physical or mental ability to do basic work activities ("Step Two").

3.     If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations ("Step Three"). If the claimant has such an impairment, the Commissioner will consider him disabled without considering vocational factors such as age, education, and work experience.

4.     Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work ("Step Four").

5.     Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform ("Step Five").

20 C.F.R. § 404.1520. The claimant bears the burden of proof at Steps One through Four. See *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). At Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work existing in significant numbers in the national economy. See id.; see also 20 C.F.R. § 416.920(g).

When an ALJ determines a claimant is not "disabled" and the Commissioner upholds the decision, the claimant has the opportunity to seek judicial review from the district court. See 42 U.S.C. § 405(g). In this capacity, the district court performs "an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations removed). "Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the ALJ were based on those principles."

*Russ v. Commissioner*, 582 F. Supp. 3d 151, 157−58 (2022) (citing cases). Absent legal error, this Court may not set aside the decision of the Commissioner if it is supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'") (quoting 42 U.S.C. § 405(g)); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Id.

"'Substantial evidence' is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lamay v. Astrue*, 562 F.3d 503, 507 (2d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Biestek*, 139 S. Ct. at 1154 ("[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high."). The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in original) (citations omitted). A district court "must 'consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Petrie v. Astrue*, 412 F. App'x 401, 403–04 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859

F.2d 255, 258 (2d Cir. 1988)). "[T]he substantial evidence rule also applies to inferences and conclusions that are drawn from findings of fact." *Nieves v. Colvin*, No. 3:15-cv-01842 (JCH), 2016 WL 7489041, at *3 (D. Conn. Dec. 30, 2016).

## III. ANALYSIS

Viets challenges the ALJ's decision at Steps Three, Four and Five. The Commissioner opposes her arguments at each step. For the following reasons, the Court finds the ALJ erred at Step Three and remands the case. It declines to address Steps Four and Five.

At Step Three of the sequential evaluation process, an ALJ must determine whether a claimant's impairment(s) meets an impairment listed at Appendix 1 to Subpart P of 20 C.F.R. § 404. See 20 C.F.R. § 404.1520(d). If so, and if the impairment is of sufficient duration, the claimant is deemed disabled and the inquiry ends without the ALJ proceeding to Steps Four and Five. *Id.*; *see also Koch v. Colvin*, 570 Fed. Appx. 99, 101 (2d Cir. 2014). If a claimant's impairment or combination of impairments does not meet the specific criteria of a listing, it still may be found to equal that listing. *Id.* A claimant's impairments will be considered medically equivalent if they are "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526(a).

An ALJ's finding as to whether a claimant's impairment meets or equals a listing "must reflect a comparison of the symptoms, signs, and laboratory findings about the impairment, as shown in the medical evidence, with the medical criteria as shown with the listed impairment." *Kuleszo v. Barnhart*, 232 F. Supp. 2d 44, 52 (W.D.N.Y. 2002) (citing 20 C.F.R. § 404.1526). For "medical equivalency," the Code

of Federal Regulations requires an ALJ to "consider all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant to this finding." 20 C.F.R. § 404.1526(c) (emphasis added).

Here, the ALJ considered five listings: (1) 1.18 (Abnormality of a major joint(s) in any extremity), (2) 11.09 (Multiple Sclerosis), (3) 12.04 (Depressive, Bipolar and Related Disorders), (4) 12.06 (Anxiety and Obsessive-Compulsive Disorders), and (5) 12.15 (Trauma- and Stressor-related Disorders). (See R. 20−22.) Because the ALJ determined obesity was a severe impairment, the ALJ explained he took obesity into account when evaluating the listings. (R. 21.) For all five listings, the ALJ concluded "medical evidence does not substantiate listing level severity of the claimant's impairments, either individually or in combination, and no acceptable medical source has mentioned findings equivalent in severity" to one of the listings. (R. 20.)

Claimant first argues the ALJ committed reversible error at Step Three, because he failed to consider two severe impairments: degenerative changes in the knees and osteochondral lesion of the right talar dome (lower right ankle bone/cartilage growth). The Court agrees.

As the Second Circuit has made clear, it is reversible error for an ALJ to "fail[ ] to apply the correct legal standard." *Kohler*, 546 F.3d at 265. This can include "failure to adhere to the applicable regulations." *Id.* In an analogous situation in *Kohler*, the Second Circuit reviewed an ALJ's failure to follow § 404.1520a—the regulation on evaluating the severity of a mental health impairment—which required the ALJ to evaluate four factors when rating the degree of a claimant's

8

functional limitations and include necessary findings. *Id.* at 266. The Second Circuit observed "the ALJ failed to adhere to the regulations, as his written decision does not reflect application of the special technique and, in particular, lacks specific findings with respect to each of the four functional areas described in § 404.1520a(c)." *Id.* It concluded:

> [B]ecause the decision contains no specific findings regarding Kohler's degree of limitation in the four functional areas by which disabling conditions are rated, the Court <u>cannot determine whether there is substantial evidence</u> for the ALJ's conclusion that Kohler's impairment, while severe, was not as severe as any listed disabling condition.

*Id.* at 267−68 (emphasis added). The Second Circuit also criticized the ALJ's "tendency to overlook or mischaracterize relevant evidence, often to Kohler's disadvantage." *Id.* at 268. It noted, "the bulk of the ALJ's decision focused on Kohler's ability to maintain concentration, persistence of pace and her periods of decompensation (or lack thereof)." *Id.* at 267.

While the relevant regulation is different in Viets' case, the legal reasoning applies with equal force. As an initial matter, Step Three of § 404.1520 requires the ALJ to "consider the medical severity of [the claimant's] impairment(s)" and determine whether the "impairment(s) . . . meets or equals one of [the] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. § 404.1520(a)(iii). Here, the ALJ never considered whether Viets' two severe impairments—degenerative changes in the knees and osteochondral lesion of the right talar dome—met any of the listings. If he had, he likely would have considered other listings, including Listing 1.17 (Reconstructive surgery or surgical

9

arthrodesis of a major weight-bearing joint), as there is evidence to suggest this listing may apply to Viets' conditions.  (See, e.g., R. 1136, 2211.)

Additionally, because the ALJ failed to mention these two severe impairments at Step Three, the Court cannot determine whether the ALJ properly evaluated the combination of Viets' impairments for medical equivalence. Subsection (c) of § 404.1526 provides, "When we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding."  20 C.F.R. § 404.1526(c) (emphasis added).  The ALJ must provide "an adequate basis" to support his conclusion at Step Three.  *Larkins v. Barnhart*, 87 F. App'x 193, 194 (2d Cir. 2004) ("We hold that the ALJ lacked an adequate basis for determining, at step three, that Larkins did not have a listed impairment. The ALJ gave no specific reasons for his conclusion that she did not have a listed impairment, but stated only that '[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment,' and that he had paid '[p]articular attention' to Listing 11.09."). Here, the ALJ made no mention of Viets' ankle and knee impairments or any other non-severe impairments.  Courts have found this type of error is reversible under both the "legal error" and "harmless error" standards.  *Compare Notaro v. Berryhill*, No. 16-cv-00603, 2017 WL 4324690, at *3 (W.D.N.Y. Sept. 29, 2017) ("The ALJ's failure to consider plaintiff's various other mental health diagnoses at steps two and three constituted reversible error, because a full consideration of plaintiff's anxiety, PTSD, and personality disorder could have affected the outcome of his application."), *and Eller v. Colvin*, No.

10

1:14CV493, 2015 WL 4489479, at *4 (M.D.N.C. July 22, 2015) (finding that failure to mention or discuss a "severe impairment" is reversible error, because it is unclear whether the ALJ's determination is based on substantial evidence and the error is not harmless given that the analysis would stop at Step Three), *and O'Donnell v. Astrue*, No. 1:10–CV–00458, 2011 WL 3321289, at *7 (N.D. Ill. Aug. 1, 2011) (explaining that ALJ's failure to mention one of the severe impairments at Step Three prevents "meaningful judicial review" because "it is unclear from the ALJ's decision what impact the medical evidence of [that impairment] had on her step three determination or whether the ALJ even considered this evidence at step three"); *with Lynne M. W. v. Kijakazi*, No. 1:21-cv-639 (GTS/TWD), 2022 WL 18587760 (N.D.N.Y. Sept. 2, 2022) ("When inadequacies in the ALJ's decision frustrate meaningful review of the substantial evidence inquiry, remand may be appropriate.") (citing *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)). Therefore, this case must be reversed and remanded.

As with the ALJ in Kohler, the ALJ in this case overlooked and mischaracterized evidence to Viets' detriment. For example, as evidence that Viets is not disabled, the ALJ repeatedly cited the single page in the record in which Viets reported she could "function until 10 pm." (R. 28.) But this reference relates to her complaints of chronic fatigue: "Complains of generalized weakness and feeling tired since diagnosis of MS. . . . . Wakes up sometimes during night. Denies falling asleep suddenly. She is on Modafinil 100mg bid. She is able to function until 10pm when she passes out and sleep." (R. 2436.) Viets' bedtime does not equate to her ability to work an eight-hour day. In any event, other evidence in the record

11

indicates she became so fatigued she would fall asleep at 8 pm. (R. 1390.) As another example, the ALJ often cited evidence that Viets appeared "well-groomed" and "cooperative" at her medical appointments to support his conclusion that her mental health was stable. The Second Circuit has cautioned against drawing negative inferences against a claimant based on their ability to perform daily tasks, such as getting dressed for, attending and cooperating at an appointment. See *Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. 2022) ("But Rucker's ability to attend counseling sessions—in which she is receiving treatment to alleviate her symptoms—has no bearing on her ability to attend work. Unlike a physician's office, work is a different, more stressful environment for Rucker in which her psychiatric triggers are exacerbated by co-worker interaction and the need to respond appropriately to supervision.")

Viets also lodged three other arguments: that the ALJ a) failed to articulate its specific findings for Listings 1.18 and 11.09; b) improperly based his Listings 12.00 (Mental Disorders) conclusions on medical consultants who did not have the full record and by selectively choosing findings from Dr. Duboff-Jacomini who he found "partially persuasive;" and c) erred in his credibility assessment of treating source opinions. The Commissioner opposes all arguments. The Court will not consider the remaining arguments given its decision to remand.

However, on remand, the Court recommends the ALJ revisit is previous determinations in light of Viets' arguments. The ALJ should consider the medical records in the context of reasoning from two circuit court cases, which the Second

Circuit favorably quoted in *Estrella*, 925 F.3d at 97. As the Seventh Circuit aptly put it:

> A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days. . . . Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job.

*Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). The Ninth Circuit offered comparable insight for mental health conditions: "Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The ALJ should articulate its analysis of the highly complex and interconnected nature of Viets' conditions. *See generally Rosario v. Kijakazi*, No. 20-CV-05490 (JPC) (BCM), 2022 WL 875925, at *16 (S.D.N.Y. Mar. 15, 2022) ("Particularly given the complexity of this case – involving an interconnected set of physical and mental impairments, some of which were not even diagnosed until after the state agency reviewers rendered their opinions – I cannot conclude that the ALJ had sufficient medical opinion evidence before him to adequately assess plaintiff's residual functional capacity.").

## IV.     CONCLUSION

For the above reasons, Claimant's Motion to Reverse the Decision of the Commissioner is GRANTED, and the Court remands the case for further proceedings consistent with this decision. The Respondent's Cross-Motion for Judgment on the Pleadings is DENIED. The Court recommends the ALJ revisit its

determinations at Steps Three, Four and Five as different conclusions may be warranted. The Clerk is directed to close this case.

                                                **IT IS SO ORDERED.**

                                                _____
                                                **Hon. Vanessa L. Bryant
                                                United States District Judge**

**Dated at Hartford, Connecticut: March 30, 2023.**